**SULAIMAN LAW GROUP, LTD.**
Alexander J. Taylor, Esq. (State Bar No. 332334)
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
Facsimile: (630) 575-8188
Email: ataylor@sulaimanlaw.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE TIMMONS,<br><br>               Plaintiff,<br><br>   v.<br><br>CENTER POINTE LAW, P.C.,<br><br>               Defendant. | Case No.  3:24-cv-08531<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. §1679 ET SEQ.;**<br><br>**2. VIOLATION OF THE CALIFORNIA CREDIT SERVICES ORGANIZATIONS ACT OF 1984, CAL. CIV. CODE §1789.10 ET SEQ.**<br><br>**3. VIOLATIONS OF THE CALIFORNIA FAIR DEBT SETTLEMENT PROCEDURE ACT, CAL. CIV. CODE § 1788.300 *et seq.*;**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

NOW comes LAURIE TIMMONS ("Plaintiff"), by and through the undersigned, complaining as to the conduct of CENTER POINTE LAW, P.C. ("Defendant") as follows:

### NATURE OF THE ACTION

1

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.* the California Credit Services Organizations Act of 1984 ("CCSOA") pursuant to Cal. Civ. Code §1789.10 *et seq.,* and the California Fair Debt Settlement Practices Act ("CFDSPA") under Cal. Civ. Code § 1788.300 *et seq.* for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Northern District of California and a substantial portion of the events or omissions giving rise to the claims occurred within the Northern District of California.

### PARTIES

4. Plaintiff is a natural "person," as defined by 47 U.S.C. § 153(39), over 18 years of age, residing in Napa, California, which lies within the Northern District of California.

5. Defendant is a credit repair organization that offers its clients both legal and non-legal services designed to resolve their debt issues, in turn allowing such

consumer's to improve their credit history by using Defendant's service. Defendant is a professional corporation organized under the laws of the state of Pennsylvania with its principal place of business located at 307 23rd Street, Ext. Suite 950, Sharpsburg, Pennsylvania 15215.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

7. In approximately March of 2023, Plaintiff was seeking to improve her credit and try and resolve some debts that were appearing on her credit report, and began considering whether to enlist the services of a credit repair organization or debt consolidation company.

8. Plaintiff subsequently came upon Defendant, and spoke with Defendant over the phone on or around March 7, 2023.

9. During this phone call, Defendant explained the nature of its services and how Plaintiff would enroll a number of debts in Defendant's program, make monthly payments to Defendant, with which Defendant would attempt to resolve the debts for substantially less than the current balance of the enrolled debts.

10. Plaintiff was informed that she would enroll a number of debts in Defendant's program, make monthly payments to Defendant, and once there were enough funds from which Defendant could negotiate with her creditors, Defendant would begin

3

working on resolving Plaintiff's debts with the creditors or those seeking collection of the enrolled debts.

11. Defendant further represented that, through its services, it would seek to have enrolled debts rendered uncollectible or otherwise completely removed from Plaintiff's credit reports.

12. Defendant further represented that both an explicit and implicit purpose of its services was to improve Plaintiff's credit through its settlement services and efforts to dispute and remove information from Plaintiff's credit reports.

13. Defendant additionally represented that it would provide legal representation to Plaintiff if she were to bring an action against any of her creditors, or if her creditors brought legal action against Plaintiff.

14. Defendant further represented, after 35 months of payments, all of Plaintiff's enrolled obligations would be resolved and no longer be impacting Plaintiff's credit.

15. Finally, Defendant informed Plaintiff that after a nominal temporary impact to her credit, she would see a large boost to her credit within 6 months, after Defendant had begun resolving her obligations.

16. Finding desirable the nature of Defendant's representations, Plaintiff entered into a contract with Defendant for services on or about March 7, 2023.

17. Plaintiff then began making her monthly payments to Defendant, totaling approximately $312 each month.

4

18. Although Plaintiff was current on her obligations at the time she enrolled in Defendant's services, Defendant instructed Plaintiff to cease paying her creditors and instead divert those funds to Defendant for its services.

19. Defendant failed to adequately explain this aspect of its services prior to Plaintiff signing up and failed to disclose the negative consequences this conduct would have on Plaintiff's creditworthiness.

20. Furthermore, the contract Plaintiff signed with Defendant over the phone was not adequately explained and explicitly contradicted the representations Defendant made over the phone in order to induce Plaintiff to use its services.

21. Upon information and belief, Defendant engages in a pattern and practice of contradicting its representations regarding its services through its contract.

22. After making payments to Defendant for approximately one year, Defendant had failed to meaningfully perform any services for Plaintiff.

23. Defendant failed to resolve any of Plaintiff's enrolled obligations, and further failed to dispute any of Plaintiff's debts or otherwise have them rendered uncollectible or removed from Plaintiff's credit report.

24. Throughout the entire time Plaintiff made payments, she would routinely request status updates from Defendant regarding its services, and Defendant persistently strung Plaintiff along and provided her the run-around by promising that the represented results would be delivered so long as she continued making payments.

25.  Ultimately, Plaintiff paid thousands of dollars to Defendant, under the guise that she would have debts resolved for substantial savings, just to be left in a significantly worse financial position as a result of Defendant's wholly deficient and misrepresented services.

26.  Furthermore, as a result of following Defendant's advice to cease paying her creditors and instead divert those payments to Defendant for its services, Plaintiff was sued in Napa County Superior Court on or around April 4, 2024 by JP Morgan Chase Bank, N.A. regarding an account she had enrolled into Defendant's program.

27.  Likewise, Discover Bank filed a lawsuit on or about April 3, 2024 in Napa County Superior Court against Plaintiff's husband regarding an account enrolled into Defendant's program.

28.  Though Plaintiff went to Defendant for assistance with these lawsuits as Defendant promised, Defendant subsequently informed Plaintiff that it would be unable to procure a settlement with Discover and could not assist with either account.

29.  In fact, the extent of Defendant's 'assistance' for which Plaintiff was paying hundreds of dollars per month was merely to provide a series of instructions on how to file an answer to the Chase and Discover litigation herself.

30.  Plaintiff's credit score in this time fell nearly 300 points, and she ultimately was forced to resolve the Discover and Chase litigation on her own.

6

31. Furious that Defendant had failed to take any action on her behalf whatsoever, Claimant cancelled her agreement with Defendant in approximately June 2024.

32. Despite the fact that it had not performed any tasks for Plaintiff regarding the two accounts it purportedly was to represent her for, Defendant did not fully refund Plaintiff for the services it failed to perform.

33. Frustrated and distressed over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

34. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm, denial of the benefit of her bargain, making payments for deficient credit repair services, relying upon Defendant's representations to her detriment, being subjected to improper fees, as well as a violation of her state and federally protected interests – interests which were harmed and put at a material risk of harm as a result of Defendant's conduct.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

35. Plaintiff repeats and realleges paragraphs 1 through 34 as though fully set forth herein.

36. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

37. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or

other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a. Violations of CROA § 1679b(a)

38. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

39. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it provided Plaintiff. When Defendant convinced Plaintiff to use its services, it represented that all of Plaintiff's enrolled debts and obligations would be resolved and removed from her credit reports after sufficient payments. Despite Plaintiff's maintenance of these payments, Defendant failed to perform any services for Plaintiff or otherwise deliver the represented results.

40. Defendant further violated the above referenced provisions of the CROA through its deceptive and misleading representations regarding where Plaintiff's

payments were going. Throughout the parties' dealings, Defendant deceptively and misleadingly provided Plaintiff the run-around on precisely where her fees were going. Defendant engaged in this deceptive and misleading conduct in order to mislead Plaintiff into thinking that Defendant's retention of fees was justified, and to similarly attempt to convince Plaintiff that her fees were being applied as originally represented, despite that not being the case. Defendant engaged in this deceptive and misleading run-around with Plaintiff in order to continue bilking payments from Plaintiff.

41. Defendant further violated the above referenced provisions of the CROA by deceptively representing the effectiveness of its services. Despite Plaintiff making payments for over a year, Defendant failed to address any of Plaintiff's enrolled debts.

42. Defendant further violated the above referenced provisions of the CROA by deceptively representing the extent to which it would assist Plaintiff were she sued by a creditor on any obligation she had hired Defendant to resolve. Defendant claimed that it would provide Plaintiff representation and legal services related to defense while attempting to resolve the obligation, yet it completely failed to resolve the obligations as promised. Further, once Plaintiff was actually sued, the extent of Defendant's assistance was to merely provide Plaintiff what was essentially a set of 'do-it-yourself' instructions on filing an answer, woefully short of what Defendant indicated it would do to help were Plaintiff sued.

9

### b. Violations of CROA § 1679b(b)

43. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

44. Defendant violated § 1679b(b) through its charging and receiving of money for services it agreed to perform for Plaintiff before such services were fully performed. Defendant's practice of charging a retainer for services upfront, before such services are performed, inherently violates the CROA. Defendant similarly withheld sums from credit repair services it never actually performed, and never fully refunded such payments to Plaintiff.

### c. Violation of CROA § 1679c

45. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

46. Defendant violated 15 U.S.C. § 1679c through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

### d. Violation of CROA § 1679d(4)

47. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'"

48. Defendant violated 15 U.S.C. § 1679d(4) through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract. Nowhere in the contract between Plaintiff and Defendant does Defendant provide such a disclosure in bold face type in immediate proximity to the space reserved for Plaintiff's signature, demonstrating Defendant's direct violation of § 1679d(4).

49. As a result of Defendant's deficient contract, the contract should be deemed void and unenforceable. 15 U.S.C. § 1679f(c).

### e. Violation of CROA § 1679f(b)

11

50. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

51. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded her under the CROA. In the contract between the parties, Defendant attempts to get Plaintiff to waive a number of rights and protections afforded her, including the entire applicability of the CROA.

52. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, LAURIE TIMMONS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

    c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

    d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

    e. Awarding any other relief as this Honorable Court deems just and appropriate.

12

## COUNT II – VIOLATIONS OF THE CALIFORNIA CREDIT SERVICES ORGANIZATION ACT OF 1984

53. Plaintiff restates and realleges paragraphs 1 through 52 as though fully set forth herein.

54. Plaintiff is a "buyer" as defined by Cal. Civ. Code § 1789.12(c).

55. Defendant is a "credit services organization" as defined by Cal. Civ. Code § 1789.12(a).

### a. Violation of CCSOA § 1789.13

56. The CCSOA, pursuant to Cal. Civ. Code § 1789.13, provides a list of prohibited conduct for credit services organizations.

57. Pursuant to § 1789.13(a), a credit services organization cannot "charge or receive any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer."

58. Defendant violated § 1789.13(a) when it charged and received money from Plaintiff without fully completing the services. As alluded to *supra.,* Defendant improperly retained Plaintiff's payments without first fully performing the services justifying such retained payments.

59. Pursuant to § 1789.13(g), credit services organization cannot "[m]ake or use untrue or misleading representations in the offer or sale of the services of a credit services organization." Similarly, pursuant to § 1789.13(h), a credit services

13

organization cannot "[e]ngage, directly or indirectly, in an act, practice, or course of business that operates or would operate as a fraud or deception upon a person in connection with the offer or sale of the services of a credit service organization."

60. Defendant violated §§ 1789.13(g)&(h) through its deceptive and misleading representations regarding the nature, cost, and efficacy of its services, as discussed *supra*.

### b. Violations of CCSOA §§ 1789.14-1789.15

61. The CCSOA, pursuant to Cal. Civ. Code § 1789.15, provides the extent of information that must be provided to a buyer by a credit services organization under § 1789.14.

62. Defendant violated these provisions of the CCSOA by failing to provide Plaintiff such disclosures and similarly failing to provide Plaintiff a copy of the disclosures.

### c. Violations of CCSOA § 1789.16(a)

63. The CCSOA, much like the CROA, requires credit services organizations to include a conspicuous statement regarding a consumer's right to cancel a contract. *See* Cal. Civ. Code § 1789.16(a)(1).

64. Defendant violated § 1789.16(a)(1) by failing to provide the required disclosure in the proper location in its contract with Plaintiff.

WHEREFORE, Plaintiff, LAURIE TIMMONS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Plaintiff actual damages pursuant to Cal. Civ. Code § 1789.21(a);

c.  Awarding Plaintiff punitive damages pursuant to Cal. Civ. Code § 1789.21(a);

d.  Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Cal. Civ. Code § 1789.21(a); and

e.  Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE CALIFORNIA FAIR DEBT SETTLEMENT PRACTICES ACT

65. Plaintiff restates and realleges paragraphs 1 through 64 as though fully set forth herein.

66. Plaintiff is a "consumer" as defined by Cal. Civ. Code § 1788.301(d).

67. Defendant is a "debt settlement provider" as defined by Cal. Civ. Code § 1788.301(a).

68. Defendant does not satisfy the test necessary to be exempted from the CFDSPA for attorneys and law firms, as it charges consumers, and charged Plaintiff, for the debt resolution services it was providing. *See* Cal. Civ. Code § 1788.304(c).

### d.  Violation of CFDSPA § 1788.302

### a.  Violations of § 1788.302(a)

69. The CFDSPA, pursuant to Cal. Civ. Code § 1788.302(a), provides that "[a] debt settlement provider shall not engage in false, deceptive, or misleading acts or

practices when providing debt settlement services." Further, "without limiting the general applicability of the foregoing," conduct violates § 1788.302(a) if it includes "[o]mitting any material information." Cal Civ. Code § 1788.302(a)(3).

70. Defendant violated § 1788.302(a) of the CFDSPA in much the same way it violated the CROA and CCSOA's prohibitions on deceptive and misleading conduct.

71. Defendant further violated Cal. Civ. Code § 1788.302(a)(3) when it omitted material information from Plaintiff regarding the extent to which it would assist her in the event she were sued on any obligation it was to resolve. Defendant's services were represented in such a way as to imply that Defendant would take all steps to directly defend Plaintiff in any potential litigation, however Defendant failed to fully advise Plaintiff that she would be responsible for filing motions related to such litigation herself.

### b. Violations of § 1788.302(c)

72. The CFDSPA, pursuant to Cal. Civ. Code § 1788.302(c), provides that "[a] debt settlement provider . . . shall not engage in unfair, abusive, or deceptive acts or practices when providing debt settlement services . . . ." Without limiting the general applicability of this prohibition, it is considered unfair, abusive, and deceptive for a debt settlement provider to "request[] or receive[] payment of any fee or consideration for debt settlement services, unless and until": (1) some sort of settlement or alteration of an enrolled debt has occurred; (2) a consumer has made at least one payment pursuant to the negotiated debt; and the fee must be proportional

16

or otherwise represent a percentage of the amount saved. agreement between the consumer and the creditor. Cal. Civ. Code § 1788.302(c)(2).

73.Defendant violated § 1788.302(c) through its unfair and deceptive conduct directed towards Plaintiff. As alluded to *supra.,* Defendant engaged in a series of deceptive and unfair conduct in connection with the services it provided Plaintiff.

74.Furthermore, Defendant violated § 1788.302(c)(2) through its requesting and receiving payment from Plaintiff for its debt resolutions services upfront, before completing any of the services it represented it would perform. Rather than wait to collect its fees until it actually provided some benefit to Plaintiff, Defendant instead began siphoning off Plaintiff's payments for charges and fees it had not actually incurred and which were entirely premature given Defendant's subsequent complete failure to perform any of the services it represented it would perform.

WHEREFORE, Plaintiff LAURIE TIMMONS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Cal. Civ. Code § 1788.305(b)(1)(B);

c. Awarding Plaintiff statutory damages, pursuant to Cal. Civ. Code § 1788.305(b)(1)(A), of $5,000.00 per violation of this title;

d. Awarding Plaintiff punitive damages pursuant to Cal. Civ. Code § 1788.305(b)(3);

e.  Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Cal. Civ. Code § 1789.21(a); and,

f.  Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: November 27, 2024         Respectfully submitted,

                                 /s/Alexander J. Taylor
                                 Alexander J. Taylor, Esq.
                                 California Bar No. 332334
                                 *Counsel for Plaintiff*
                                 Sulaiman Law Group, Ltd
                                 2500 S Highland Ave, Suite 200
                                 Lombard, IL 60148
                                 Telephone: (630) 575-8181
                                 ataylor@sulaimanlaw.com

18